UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, et al.,　　　*
ex rel. DAVID R. CIASCHINI,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Plaintiffs,　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　v.　　　　　　　　　　　　　　*　　　Civil Action No. 09-10838-JLT
　　　　　　　　　　　　　　　　　　*
AHOLD USA INC., et al.,　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Defendants.　　　　　　*

MEMORANDUM

March 22, 2012

TAURO, J.

I.　　Introduction

Plaintiff/Relator David Ciaschini ("Ciaschini) brings suit under the qui tam provisions of

the federal False Claims Act ("FCA") against Defendants asserting violations of the FCA and

similar state acts in Massachusetts, New York, Virginia, New Jersey, New Hampshire, Delaware,

and the District of Columbia.  Presently at issue is Defendants' Motion to Dismiss Counts I, III

and V through XI of the Amended Complaint [#45].  For the following reasons, Defendant's

Motion to Dismiss is ALLOWED.

II.　　Background

A.　　The False Claims Act

A private individual may bring a civil action for violations of the federal False Claims Act

in the name of the United States.[1]  The individual is known as a qui tam relator.  At the time that

_____

[1] 31 U.S.C. § 3730(b) (Supp. 2011).

1

Plaintiff/Relator David Ciaschini filed his original complaint, the FCA imposed liability on any person who: "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;"[2] or "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;"[3] or "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid."[4]

In 2009, Congress passed the Fraud Enforcement Recovery Act of 2009 ("FERA").[5] Amongst other things, FERA re-designated § 3729(a)(1) as § 3729(a)(1)(A), § 3729(a)(2) as § 3729(a)(1)(B), and § 3729(a)(3) as § 3729(a)(1)(C). It also amended § 3729(a)(2), so that as § 3729(a)(1)(B) it reads "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . ." This amendment removed the specific intent to defraud element that the Supreme Court determined was a requirement of a § 3729(a)(2) claim,[6] and it also added an explicit materiality requirement. Congress made § 3729(a)(1)(B) retroactive to all claims pending on or after June 7, 2008.[7]

---

[2] 31 U.S.C. § 3729(a)(1) (Supp. 2008).

[3] § 3729(a)(2).

[4] § 3729(a)(3).

[5] Pub. L. No. 111-21, 123 Stat. 1617.

[6] Allison Engine Co., Inc. v. United States *ex rel.* Sanders, 553 U.S. 662, 671-72 (2008).

[7] Even though some of Ciaschini's claims may have been pending on or after June 7, 2008, neither party references the FCA as amended by FERA. The change in the law, however, does not affect the court's analysis. In order to avoid confusion, all references to the FCA will be to the pre-FERA section numeration unless specifically noted otherwise.

B.     Factual Background[8]

Relator Ciaschini is a licensed pharmacist in the Commonwealth of Massachusetts.[9]  He began employment as a staff pharmacist at Defendant The Stop & Shop Supermarket Company LLC's ("Stop & Shop") store in Worcester, Massachusetts in 2000.[10]  In 2003, Ciaschini was promoted to pharmacy manager for the Worcester store,[11] and in 2004 Stop & Shop bestowed upon him the award of "Pharmacist of the Year."[12]

In 2007 and 2008, Joe Angileri, a Regional Pharmacy Manager for Stop & Shop and Ciaschini's direct manager, instructed Ciaschini to audit nine of Stop & Shop's Massachusetts stores.[13]  Ciaschini's audit reports documented the following practices occurring at all nine stores.[14]  First, is a practice referred to as "shorting" or "front-loading."  Shorting occurs when a pharmacy does not have enough of  a specific medication on hand to dispense a full prescription. The pharmacy will dispense a partial prescription and tell the customer when to return for the balance.  Allegedly, when a customer, including beneficiaries of Medicaid, Medicare, and

---

[8] Because the issues analyzed here arise in the context of a motion to dismiss, this court presents the facts as they are related in Relator's <u>Verified Amended Complaint</u>, <u>Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.</u>, 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, <u>see</u> <u>Pettengill v. Curtis</u>, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 96 (1st Cir. 2007)).

[9] V. Am. Compl. ¶ 62 [#42].

[10] V. Am. Compl. ¶ 63.

[11] V. Am. Compl. ¶ 64.

[12] V. Am. Compl. ¶ 66.

[13] V. Am. Compl. ¶¶ 245-47.

[14] V. Am. Compl. ¶ 253.

Masshealth, went to Stop & Shop to fill a prescription and Stop & Shop only dispensed some of the prescription, it would nevertheless bill that customer's insurer for the full amount of the prescription.[15] Receipts would state that the full prescription had been dispensed.[16] Customers were told when to return to pick up the remainder of their prescription.[17] If the customer did not return within fourteen days, the remainder of the prescription would be returned to stock.[18] Ciaschini estimates that this occurred between fifteen and thirty percent of the time.[19] In his Verified Amended Complaint [#42], Ciaschini states the following regarding the practice of shorting:

> Upon information and belief, as the defendants' employees had apparently been directed by their regional supervisors, each time one of the defendants' employees provided a Beneficiary with a shorted amount, the defendants' employees: (a) entered into their pharmacy computer a false number of tablets, capsules or other items being dispensed, that being the full amount of the item called for in the prescription as opposed to the actual amount being dispensed, (b) printed out a receipt which falsely reflected that the Beneficiary had, in fact, received the full amount of the prescription, and (c) required the Beneficiary to sign an electronic signature capture pad, which recorded the Beneficiary's signature as an acknowledgment, by the beneficiary, that they received the full amount of the prescription, despite the fact that they had not.[20]

According to Ciaschini, shorting bills submitted to Medicare and Medicaid constitute false

---

[15] V. Am. Compl. ¶ 84.

[16] V. Am. Compl. ¶ 87.

[17] V. Am. Compl. ¶ 92.

[18] V. Am. Compl. ¶ 93.

[19] V. Am. Compl. ¶ 94.

[20] V. Am. Compl. ¶ 101.

claims.[21]  He states:

> To the extent that the defendants billed the government, in advance, for prescription medications and items before they were ever dispensed to a Beneficiary, but were eventually dispensed to a Beneficiary, the defendants fraudulently engaged in front-loading, thereby depriving the government of the use of such monies which the defendants had obtained in advance by false pretenses.[22]

In the <u>Verified Amended Complaint</u>, Ciaschini includes details regarding twenty instances of shorting.  In each case, he provides (1) the date Stop & Shop billed Medicaid, Medicare, or Masshealth; (2) the prescription number; (3) the initials of the customer beneficiary; (4) the number of tablets called for in the prescription; (5) the retail price of the prescription; (6) the date Stop & Shop partially dispensed the prescription; (7) the number of tablets initially dispensed; (8) a statement that Stop & Shop's employees knowingly submitted a claim for the full prescription even though they only partially dispensed the prescription; (9) and a statement that the false claim did not indicate to Medicaid, Medicare, or Masshealth that Stop & Shop only partially dispensed the prescription.[23]

The second process Ciaschini included in his audit report is referred to as "re-adjudication."[24]  If a customer failed to pick up a prescription that had been ordered fourteen days earlier, Stop & Shop would restock that prescription.[25]  Upon restocking a prescription already

---

[21] V. Am. Compl. ¶ 104.

[22] V. Am. Compl. ¶ 271.

[23] V. Am. Compl. ¶¶ 107-225.

[24] V. Am. Compl. ¶ 233.

[25] V. Am. Compl. ¶ 232.

adjudicated (approved for payment) by a federal healthcare program, Stop & Shop is:

> required to 're-adjudicate' the approval for, and payment of, the Restocked Item through the electronic billing system for Federal Health Care Programs and have its account debited . . . effectively refunding the payment which was received for the item approved but never picked up by or delivered to the Beneficiary.[26]

At the nine stores audited by Ciaschini, Stop & Shop allegedly did not re-adjudicate restocked items.[27]  In other words, Stop & Shop billed federal healthcare programs in full even when it restocked prescriptions.

The third process is referred to as "lot control."  As the <u>Verified Amended Complaint</u> states: "Under federal law, manufacturers of prescription drugs are required to identify such products by 'lot numbers' with each lot having a specific expiration date."[28]  This requirement keeps retailers from mixing multiple inventories of the same drug that have different expiration dates.[29]  When restocking prescriptions that customers failed to pick up, Stop & Shop allegedly did not "ensure that the drugs [we]re returned to the proper 'lot.'"[30]  Drugs with varying expiration dates were commingled in the same lot.[31]

In each of his audit reports, Ciaschini included the following statement: "Illegal Billings.

---

[26] V. Am. Compl. ¶ 234.

[27] V. Am. Compl. ¶ 239.

[28] V. Am. Compl. ¶ 240.

[29] V. Am. Compl. ¶ 241.

[30] V. Am. Compl. ¶ 242.

[31] V. Am. Compl. ¶ 243.

Can get fined."[32]  Ciaschini's audit reports angered Angileri, who demanded that Ciaschini alter his reports to exclude these findings.[33]  Angileri told Ciaschini "that if he ever completed an audit report which again revealed his employers' practices in this regard, he would be terminated."[34]  Ciaschini refused to amend his reports, and Stop & Shop subsequently terminated his employment.[35]

Ciaschini then filed his complaint in the current action.  In his Verified Amended Complaint, he named Ahold USA Inc. ("Ahold"), The Stop & Shop Supermarket Company LLC, Giant Food LLC ("Giant"), Giant of Maryland LCC ("Giant MD"), and Stop & Shop/Giant-Landover ("Landover") as defendants.[36]  Ciaschini alleges that Stop and Shop, Giant, Giant MD, and Landover are wholly-owned and operated subsidiaries of Ahold,[37] and that Landover is "a partnership and/or joint venture by and between" Stop & Shop and/or Giant MD and/or Giant.[38]

---

[32] V. Am. Compl. ¶ 32.

[33] V. Am. Compl. ¶ 254.

[34] V. Am. Compl. ¶ 256.

[35] V. Am. Compl. ¶¶ 257-58.

[36] V. Am. Compl. ¶¶ 43-51.  In the original Verified Complaint, Ciaschini named Royal Ahold, Ahold USA Inc., Stop & Shop/Giant-Landover, The Stop & Shop Supermarket Company LLC, and Giant Food LLC as defendants.  In their Motion to Dismiss, Defendants state that Landover is a non-existent entity.  Mem. Supp. Defs.' Mot. Dismiss Counts I, III and V through XI of Am. Compl.  Whether Landover does or does not exist has no effect on the court's decision regarding the motion to dismiss.

[37] V. Am. Compl. ¶¶ 45, 50, 53.

[38] V. Am. Compl. ¶ 51.  Ciaschini contradicts himself in the Verified Amended Complaint regarding which entities merged to form Landover.  At paragraph 51 he states that Landover is a partnership and/or joint venture of Stop & Shop and Giant MD.  At paragraph 56, he states that Landover was formed by a merger, partnership, and/or formation of a joint venture of Stop & Shop, Giant MD, and Giant.  Lastly, at paragraph 69, he states "When *Stop & Shop* and *Giant*

Defendant also alleges that Landover maintains one corporate headquarters with one main computer system that monitors prescription inventories at all Stop & Shop, Giant, and Giant MD stores.[39] All payment claims for prescriptions billed to federal healthcare programs from all Stop & Shop, Giant, and Giant MD stores are submitted through this computer system.[40] Ciaschini alleges that since company policy is set at corporate headquarters and all claims are processed through corporate headquarters, shorting and re-adjudication occurred at all Stop & Shop, Giant, and Giant MD stores.[41] For the same reasons, he asserts that he can maintain suit against all Defendants even though he was an employee of Stop & Shop, not Giant or Giant MD.

In the Verified Amended Complaint, Ciaschini asserts that shorting (or front-loading), re-adjudication, and the mixing of lots violate the federal False Claims Act (Count I). In paragraphs

---

'merged' into *Stop & Shop/Giant-Landover* . . . ." Which entities merged, formed a partnership, or formed a joint venture to create Landover is irrelevant to the court's decision. For the sake of clarity, and in reading the facts in the light most favorable to Plaintiff/Relator, the court will assume that Landover, if it exists, consists of Stop & Shop, Giant MD, and Giant.

[39] V. Am. Compl. ¶¶ 69-70.

[40] V. Am. Compl. ¶¶ 71-72; see also V. Am. Compl. ¶ 73 ("It is the custom and practice of the pharmacists employed by the defendants at all of defendants' business locations to electronically submit the prescription of a Beneficiary of a Federal Health Care Program to Corporate Headquarters, which, in turn, electronically submits the claim for payment to the Federal Health Care Program through the defendants' electronic billing system to be "adjudicated, . . .").

[41] V. Am. Compl. ¶ 83 ("Upon information and belief, as a policy, procedures and custom implemented under the direction of the defendants' Corporate Headquarters, the defendants' pharmacies engaged in a fraudulent practice commonly known as billing for partials, or 'shorting.'"); V. Am. Compl. ¶ 239 ("the failure to re-adjudicate was a company policy which was, and is, being implemented by Corporate Headquarters for all of the defendant's stores."). Ciaschini provides no comprehensive statement that the mixing of lots occurred at all of Defendants' stores.

267-269, he specifically claims that Defendants violated 31 U.S.C. § 3729(a)(1)-(3).[42] He also asserts that the Defendants violated the Massachusetts False Claims Act (Count III), The New York False Claims Act (Count V), the Virginia Fraud Against Taxpayers Act (Count VI), The New Jersey False Claims Act (Count VII), the Rhode Island "State False Claim Act" (Count VIII), the New Hampshire False Claims Act (Count IX), the Delaware False Claims and Reporting Act (Count X), and the District of Columbia False Claims Act (Count XI). Lastly, Ciaschini brings claims for retaliation under both the FCA (Count II) and the Massachusetts False Claims Act (Count IV). These, however, are not part of this Motion to Dismiss, and will be dealt with separately.

     C.     Procedural Background

Relator Ciaschini filed this suit against Royal Ahold, Ahold, Landover, Stop & Shop, and Giant in United State District Court for the District of Massachusetts on May 20, 2009. On August 18, 2010, the Government notified the court that it was declining to intervene in the suit. All states named in the suit also declined to intervene [#12]. On January 19, 2011, Defendants Ahold, Stop & Shop, and Giant filed their Answer [#23]. Defendant Royal Ahold subsequently filed a Motion to Dismiss [#24]. On February 28, 2011, the court allowed a Stipulation Discontinuing Action with Prejudice against Royal Ahold [#28]. The remaining parties filed a Motion for Judgment on the Pleadings on Counts I, III, and V through XI of the Complaint and for Related Relief [#35]. The court allowed Ciaschini's motion to amend the complaint, and on May 4, 2011, Ciaschini filed the Verified Amended Complaint [#42]. On May 6, 2011,

---

[42] As is explained below, this refers to sections of the Code prior to the enactment of the Fraud Enforcement Recovery Act of 2009. See infra Part III.A.

Defendants filed a Motion to Dismiss Counts I, II, and V-XI of the Verified Amended Complaint [#45], which is at issue here. The court held a hearing on February 14, 2012, and took the Motion to Dismiss under advisement.

III.     Discussion

    A.      Standard for Motion to Dismiss

In order "to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'"[43] The complaint must present more than "labels and conclusions or a formulaic recitation of the elements of a cause of action . . . ."[44] Even though the court construes the facts in the light most favorable to the plaintiff, "[t]he court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim, however, nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion."[45]

In cases of fraud, a heightened pleading standard applies. Fed. R. civ. P. 9(b) reads: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) applies to claims of violations of the FCA,[46] which means that a qui

---

[43] Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007).

[44] Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotations and citations omitted).

[45] Cordero–Hernandez v. Hernandez–Ballesteros, 449 F.3d 240, 244 n.3 (1st Cir. 2006).

[46] United States ex rel. Karvelas v. Melrose-Wakefield Hospital, 360 F.3d 220, 227-28 (1st Cir. 2004) (abrogation on other grounds recognized by United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 46 n.7 (1st Cir. 2009)).

tam relator who sues under the FCA must plead fraud with particularity. In order to satisfy the pleading requirements of Rule 9(b), a plaintiff bringing a suit for violation of the FCA "must specify 'the time, place, and content of an alleged false representation.'"[47] The First Circuit has referred to the requirement as pleading "the who, what, where, and when of the allegedly false or fraudulent representation."[48] This does not mean that the plaintiff must provide all of his or her evidence in the complaint. As the First Circuit has stated, "The rule may be satisfied . . . 'where, although some questions remain unanswered, the complaint as a whole is sufficiently particular to pass muster under the FCA.'"[49]

It is certain that a relator must allege more than the possibility of fraud in order to satisfy Rule 9(b) for a § 3729(a)(1) violation. The First Circuit has stated: "Articulating a theory as to how a company *could* violate subsection (a)(1), without more, is insufficient to comply with the requirements of Rule 9(b)."[50] A methodology by which a defendant could have submitted false claims is inadequate if the plaintiff fails to cite actual false claims.

It is not possible to provide a "checklist" of facts that a qui tam relator must include in a complaint in order to satisfy Rule 9(b).[51] There are, however, specific details the inclusion of

---

[47] United States *ex rel.* Rost v. Pfizer, Inc., 507 F.3d 720, 731 (1st Cir. 2007) (abrogation on other grounds recognized by Gagne, 565 F.3d at 46 n.7) (quoting Doyle v. Hasbro, Inc.. 103 F.3d 186, 194 (1st Cir. 1996)).

[48] Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

[49] Gagne, F.3d at 45 (quoting Karvelas, 360 F.3d at 233 n.17).

[50] United States *ex rel*. Crennen v. Dell Marketing, L.P., 711 F. Supp. 2d. 157, 162 (D. Mass. 2010).

[51] Karvelas, 360 F.3d at 233.

which strengthen a case that the relator pled fraud with particularity. In <u>Karvelas</u>, the court noted the following:

> [D]etails concerning the dates of the claims, the content of the forms or bills submitted, their identification number, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practice and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity. These details do not constitute a checklist of mandatory requirements that must be satisfied by each allegation included in a complaint. However, like the Eleventh Circuit, we believe that "some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)."[52]

In <u>Karvelas</u>, a former employee of the defendant alleged that the defendant "knowingly submitted false claims to the United States government in order to obtain Medicare and Medicaid payments, in violation of the False Claims Act." The First Circuit upheld the district court's ruling that the complaint did not satisfy Rule 9(b) for a violation of § 3729(a)(1) because the relator failed "to identify with particularity any false claims" actually submitted to the government.[53] As the court stated:

> the complaint never specifies the dates or content of any particular false or fraudulent claim allegedly submitted for reimbursement by Medicare or Medicaid. It provides no identification numbers or amounts charged in individual claims for specific tests, supplies, or services. It does not identify or describe the individuals involved in the improper billing or allege with particularity any certification of

---

[52] <u>Id.</u> (quoting <u>United States</u> <i>ex rel.</i> <u>Clausen v. Laboratory Corp. of America, Inc.</u>, 290 F.3d 1301, 1312 n.21 (2002)).

[53] <u>Karvelas</u>, 360 F.3d at 235.

compliance with federal regulations in order to obtain payments.[54]

The specificity requirements of Rule 9(b) also apply to violations of § 3729(a)(2).[55]  In Duxbury, a case involving a violation of § 3729(a)(2), the First Circuit upheld the district court's determination that the relator satisfied Rule 9(b) because he "identified, as to each of the eight medical providers (the who), the illegal kickbacks (the what), the rough time periods and locations (the where and when), and the filing of the false claims themselves."[56]  The court noted, however, that it was a "close call,"[57] and that it took a more lenient approach to Rule 9(b) because the plaintiff alleged that the defendant caused third parties to submit false claims instead of alleging that the defendant itself submitted the false claims.[58]  The court also limited its more lenient approach to the facts in the case.[59]

B.    Relator's Ciaschini's Shorting Theory

1.    31 U.S.C. § 3729(a)(1)

Ciaschini alleges that billing the government in advance for a full prescription when only a partial prescription has been filled constitutes submitting a false or fraudulent claim.  He alleges

---

[54] Id. at 233.

[55] United States *ex rel.* Duxbury v. Ortho Biotech Products, L.P., 579 F.3d 13, 29 (1st. Cir. 2009); Gagne, 565 F.3d at 45 ("We have previously held the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to claims brought under subsection (a)(1) of the FCA and subsection (a)(2).") (internal citations omitted).

[56] Duxbury, 579 F.3d at 30.

[57] Id.

[58] Id. at 29.

[59] Id. at 32.

that this violates the FCA even if the customer returns to pick up the remainder of his or her prescription. Ciaschini refers to this practice as shorting or front-loading. He provides detailed information regarding twenty instances when Defendants allegedly billed the government for a full prescription after only partially filling that prescription. He lists much of the information the First Circuit in Karvelas suggests "may help a relator to state his or her claims with particularity."[60] This includes billing dates, prescription numbers, customer initials, tablets called for, tablets initially dispensed, and the retail price of the prescription.[61]

Ciaschini's shorting theory, however, ultimately fails to satisfy Rule 9(b) for a claim under § 3729(a)(1) because he does not plead facts demonstrating that false claims were actually submitted to the government. Presentment is a necessary requirement of bringing a § 3729(a)(1) claim.[62] Ciaschini only provides a theory under which false claims could be submitted to the government, and fails to allege instances in which false claims were actually submitted.

Each of the twenty claims Ciaschini discusses in detail outlines how a pharmacist entered information into Stop & Shop's computer system. This information was transmitted electronically to corporate headquarters. A close reading of the facts demonstrates that Ciaschini never indicates that the information entered by the pharmacist was actually the information submitted directly to the government as a false claim. For each of these claims, Ciaschini states that upon partially dispensing a prescription, Defendants "contemporaneously falsely billed" Medicare,

---

[60] Karvelas, 360 F.3d at 233.

[61] V. Am. Compl. ¶¶ 107-225.

[62] See Gagne, 565 F.3d at 46 n.7.

14

Medicaid or Masshealth for the full prescription.[63]  The timing of when these programs were billed

is questionable because the claim of contemporaneous billing contradicts Paragraph 84 of the

Verified Amendment Complaint, which states that corporate headquarters would bill the federal

or state government after receiving information from the pharmacy.

Paragraphs 84 and 102 of the Verified Amended Complaint underscore that Ciaschini does

not describe actual claims sent to the government for payment.  Paragraph 84 reads:

> On a regular basis, the defendants' employees would dispense partial
> prescriptions to Beneficiaries of programs inclusive of Medicaid,
> Medicare and Masshealth, and prepare false records of the transaction
> for the purpose of billing such health care programs, after which
> Corporate Headquarters would fraudulently bill those healthcare
> programs for the full amount of the prescriptions at issue, despite the
> fact that the full amounts had not been dispensed.[64]

Paragraph 102 discusses what would occur after an employee would enter prescription

information into a pharmacy computer.  It reads:

> The electronic record containing such information was then
> immediately transmitted to, and stored within, the main computer at
> Corporate Headquarters, that being the same computer system
> through which Corporate Headquarters electronically submitted
> claims for payment to the Federal and State Health Care Programs.[65]

These two paragraphs establish that employees would submit statements to corporate

headquarters implying that they dispensed the full prescription.  These statements do not provide

any evidence that Defendants, in turn, submitted this actual information to the federal government

---

[63] See, e.g., V. Am. Compl. ¶ 109

[64] V. Am. Compl. ¶ 84.

[65] V. Am. Compl. ¶ 102.

for reimbursement.

Even though the court did not create a checklist in <u>Karvelas</u>, it stated at least some minimum of specificity as to how a party submitted false claims is necessary.[66]  Here, Ciaschini does not specify, "the dates or content of any particular false or fraudulent claim submitted for reimbursement by Medicare or Medicaid."[67]  This includes a failure to provide "identification numbers or amounts charged [to the government] in individual claims . . . ."[68]

Ciaschini has provided information indicating that employees prepared internal documents reflecting that prescriptions were filled in full when they were not.  He has not, however, provided any evidence that these documents were the ones submitted to the government for reimbursement.  He, also, has provided no evidence that any documents including false claims were actually submitted to the government.  Without evidence of a false claim submitted to the government for reimbursement, there is no violation of § 3729(a)(1).[69]  Relator's shorting theory fails because he has not plead fraud with particularity as is required for a violation of 31 U.S.C. § 3729(a)(1).

    2.    <u>31 U.S.C. § 3729(a)(2)</u>

Relator Ciaschini has also failed to properly plead a violation of § 3729(a)(2).  For a violation of § 3729(a)(2), Ciaschini does not have to prove that Defendants presented false claims

---

[66] <u>Karvelas</u>, 360 F.3d at 233.

[67] <u>Id.</u>

[68] <u>Id.</u>

[69] <u>United States *ex rel.* Carpenter v. Abbott Labs., Inc.</u>, 723 F. Supp. 2d 395, 403 (quoting <u>Karvelas</u> for the principle that an actual false claim is the *sine qua non* of a § 3729(a)(1) violation).

for payment.  In <u>Allison Engine</u>, the Supreme Court made it clear that § 3729(a)(2) has no presentment requirement.[70]  Rather, Ciaschini  must demonstrate that Defendants "made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.'"[71]  To allege a violation of § 3729(a)(2), Ciaschini is obligated to "connect the allegedly fraudulent statement to a planned claim on the government fisc."[72]

Ciaschini has provided facts for twenty specific prescriptions entered into Defendant's computer system and sent electronically to corporate headquarters.  He does not, however, provide details connecting the entry of the information in the computer system to planned claims on the government fisc.  Although difficult to follow, it appears from the <u>Verified Amended Complaint</u> that once an employee entered the prescription information into the computer system at a pharmacy, that information was electronically sent to corporate headquarters.[73]  Defendants would then use that same computer system to submit claims to programs including Medicare and Medicaid.[74]  Ciaschini offers no information connecting the claims sent to corporate headquarters and the claims sent to federal healthcare programs other than they existed on the same computer

---

[70] 553 U.S. at 671-72.

[71] <u>Id.</u> at 671 (quoting § 3729(a)(2)).

[72] <u>See</u> <u>Gagne</u>, 565 F.3d at 46 n.7.

[73] <u>See</u>  V. Am. Compl. ¶ 102.

[74] When describing the twenty transactions, Ciaschini includes statements such as "the defendants . . . contemporaneously falsely billed Medicare, via electronic means . . . ."  V. Am. Compl. ¶ 109.  Ciaschini does not provide any details about how the allegedly  false billing of Medicare or Medicaid took place contemporaneously to the dispensing of partial prescriptions.  In fact, this contradicts paragraph 102 of the Verified Amended Complaint, which states that the record of the disbursement was electronically transmitted to corporate headquarters, and corporate headquarters would submit claims for payment.

system. One cannot simply assume that the information provided to corporate headquarters served or was meant to serve as the basis for the claims submitted without additional details connecting the two. These documents could be nothing more than internal records that were updated when a customer either did or did not pick up the balance of a prescription. Ciaschini does not even mention whether Defendants would use these records as a basis for billing Medicare or Medicaid. Ciaschini does not need to allege that Defendants submitted false claims, but he does need to provide a connection between the information he does provide and Defendants' planned claims for reimbursement.[75] He has not done so.

The court's stringent analysis of what satisfies Rule 9(b) for a violation of 31 U.S.C. § 3729(a)(2) is necessary in this case. A more lenient standard like the one applied by the First Circuit in Duxbury is inappropriate because Ciaschini is not alleging third-parties used information prepared by Defendants to submit false claims.[76] His entire complaint, rather, is based on the assertion that Defendants themselves prepared fraudulent documents. Without a more definite connection between the information pharmacists entered into the pharmacy computers and the information Defendants relied upon to prepare submissions of claims to the government, Ciaschini's claim that Defendants violated 31 U.S.C. § 3729(a)(2) fails to satisfy Rule 9(b).

C.      Relator Ciaschini's Re-adjudication Theory

Ciaschini also alleges that Defendants did not credit ("re-adjudicate") the government for

---

[75] Gagne, 565 F.3d at 46 n.7.

[76] 579 F.3d at 29.

prescriptions that they restocked. Under this theory, Ciaschini clearly fails to plead fraud with the requisite particularity.[77] In <u>Karvelas</u>, the First Circuit listed the type of details that could satisfy Rule 9(b).[78] This included dates, the content of forms, identification numbers, amount charged to the government, the particular goods charged, and the individuals involved.[79] The court noted that this information did not constitute a required checklist, but that the relator must plead at least some of that information to satisfy Rule 9(b).[80]

Ciaschini offers no details in regards to his re-adjudication theory. He does not, for instance, provide (1) the date that any prescription was restocked; (2) the identification number for any prescription that was restocked; (3) the amount charged to the government for any prescription that was restocked; (4) the name of any prescription that was restocked; or (5) who, in particular, restocked a prescription. All Ciaschini does provide is a theory under which Defendants could have violated the FCA, which, without additional details, "is insufficient to comply with the requirements of Rule 9(b)."[81]

D. <u>Relator Ciaschini's Lot Control Theory</u>

Ciaschini alleges that when Defendants returned prescriptions to the shelf, they mixed

---

[77] Although not clearly stated in the <u>Verified Amended Complaint</u>, this theory appears to rest on a violation of 31 U.S.C. § 3729(a)(1).

[78] <u>Karvelas</u>, 360 F.3d at 233.

[79] <u>Id.</u>

[80] <u>Id.</u>

[81] <u>Crennen</u>, 711 F. Supp. 2d. at 162.

drugs with different expiration dates into the same lot,[82] which allegedly, violates federal law.[83] Again, Ciaschini fails to offer even the most basic of required facts in order to plead fraud with particularity.[84]  For instance, there is no information indicating (1) what prescription was returned to inventory; (2) the date that prescription was returned; (3) that prescription's expiration date; (4) what lot that prescription was returned to; (5) or even whether that prescription was originally billed to Medicare or Medicaid.  The Verified Amended Complaint is devoid of any information that would allow Defendant's lot control theory to satisfy Rule 9(b).

E.    Relator Ciaschini's Conspiracy Theory under 31 U.S.C. § 3729(a)(3)

In Count I of the Verified Amended Complaint, Ciaschini alleges that Defendants "conspired to defraud the Government by getting a false or fraudulent claims allowed or paid."[85] Ciaschini has presented no details demonstrating how Defendants violated 31 U.S.C. § 3729(a)(3) by conspiring to defraud the government.  Without specific information, Ciaschini's allegation of conspiracy is a mere label or legal conclusion entitled to no weight.  He therefore fails to state a claim for relief.[86]

F.    Massachusetts False Claims Act

The Massachusetts False Claims Act ("MFCA") is modeled on the federal FCA, and

---

[82] V. Am. Compl. ¶¶ 242-43.

[83] V. Am. Compl. ¶ 240.

[84] Fed. R. Civ. Pro. 9(b); Karvelas, 360 F.3d at 233.

[85] V. Am. Compl. ¶ 269.

[86] Iqbal, 129 S. Ct. at 1949.

"courts use the federal FCA for guidance in interpreting the MFCA."[87]  Here, Ciaschini alleges

that Defendant violated Mass. Gen. Laws ch. 12 § 5B(1)-(3), (8), and (9).  Mass. Gen. Laws ch.

12 § 5B(1)-(3) are substantively the same as 31 U.S.C. § 3729(a)(1)-(3) respectively.  For the

same reasons that Ciaschini's claims of violations of 31 U.S.C. § 3729(a)(1)-(3) fail, his claims of

violations of Mass. Gen. Laws ch. 12 § 5B(1)-(3) also fail.

Mass. Gen. Laws ch. 12 § 5B(8) imposes liability on one who "knowingly makes, uses, or

causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation

to pay or to transmit money or property to the commonwealth . . . ."  Here, Ciaschini has not

provided evidence that Defendants violated 12 § 5B(8).  Liberally construing the facts in his

favor, the court assumes that Ciaschini means that after Defendants billed Masshealth for a full

prescription, and the customer failed to pick up the remainder of that prescription, Defendants

violated 12 § 5B(8) by not re-adjudicating payment to the Commonwealth.  Defendants used the

documents submitted to corporate headquarters stating that they dispensed the full prescription to

conceal or avoid re-adjudicating payment.  This argument fails, however, because Ciaschini, as

stated above, never provides evidence that Defendants either billed Masshealth for a full

prescription not dispensed or failed to re-adjudicate payment if they did.

Mass. Gen. Laws ch. 12 § 5B(9) imposes liability on one who "is a beneficiary of an

inadvertent submission of a false claim to the commonwealth . . . , subsequently discovers the

---

[87] <u>United States v. Compass Medical, P.C.</u>, No. 09-12124, 2011 WL 5508916, at *7 (D. Mass.  Nov. 10, 2011); <u>see also</u> <u>Massachusetts v. Schering-Plough Corp.</u>, 779 F. Supp. 2d 224, 234 (D. Mass. 2011) ("Massachusetts courts look to federal False Claims Act cases when interpreting the MFCA because the MFCA 'was modeled on the similarly worded Federal False Claim Act, 31 U.S.C. §§ 3729 et seq.'") (quoting <u>Scannell v. Attorney General</u>, 70 Mass. App. Ct. 46, 49 n.4, 872 N.E.2d 1136m 1138 (Mass. App. Ct. 2007)).

falsity of the claim, and fails to disclose the false claim to the commonwealth . . . ." A plain reading of the text indicates that there must be a submission of a false claim for liability under 12 § 5B(9). Here, as described extensively above, Ciaschini provides no evidence that any false claims were ever submitted to the federal government or the Commonwealth of Massachusetts.

G.      Non-Massachusetts Claims

Relator Ciaschini also brings claims for violations of The New York False Claims Act (Count V), the Virginia Fraud Against Taxpayers Act (Count VI), The New Jersey False Claims Act (Count VII), the Rhode Island "State False Claim Act" (Count VIII), the New Hampshire False Claims Act (Count IX), the Delaware False Claims and Reporting Act (Count X), and the District of Columbia False Claims Act (Count XI). In the Verified Amended Complaint, Ciaschini only describes actions that took place within Massachusetts. He alleges that these actions were part of a corporate policy and thus took place in other states. He doesn't however, provide any support for the theory that shorting, re-adjudicating, or mixing of lots were in fact corporate policies. The court will not rely on these unsupported "labels and conclusions."[88] Because Ciaschini fails to provide any evidence of actions that occurred outside of Massachusetts, his New York, Virginia, New Jersey, Rhode Island, New Hampshire, Delaware, and District of Columbia claims are dismissed without prejudice to refiling in their appropriate jurisdictions.


IV.      Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Counts I, III and V through XI of the Amended Complaint is ALLOWED. Counts I and III are dismissed with prejudice.

_____

[88] Iqbal, 129 S. Ct. at 1949.

Ciaschini filed the original complaint in 2009, and has already amended the complaint in response to a motion for judgment on the pleadings.  Since the court did not address the substance of Counts V through XI, they are dismissed without prejudice to refiling in the appropriate jurisdictions.  Pursuant to 31 U.S.C. § 3730(b), the Government has filed a <u>Notice of United States' Consent to Dismissal</u> [#68] stating that it consents to dismissal of these counts.

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro<br>
United States District Judge